1
2
3
4
5
6

**STRAUSS BORRELLI PLLC**
Raina Borrelli, *admitted pro hac vice*
raina@straussborrelli.com
One Magnificent Mile
980 N. Michigan Avenue, Ste. 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

7
8
9
10
11
12

**FEDERMAN & SHERWOOD**
William B. Federman, *admitted pro hac vice*
Kennedy M. Brian, *admitted pro hac vice*
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
wbf@federmanlaw.com
kpb@federmanlaw.com

13
14

***Proposed Settlement Class Counsel***
***Additional Counsel Listed on Signature Page***

15
16

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION – SANTA ANA**

17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| KEVIN GREGERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOSHIBA AMERICA BUSINESS SOLUTIONS, INC.,<br><br>Defendant. | CASE NO. 8:24-cv-01201-FWS-ADS<br><br>Hon. Judge Fred W. Slaughter<br><br>**NOTICE OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Date: May 1, 2025**<br>**Time: 10:00 a.m.**<br>**Location:  Courtroom 10-D** |

i

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday, **May 1, 2025**, at **10:00 a.m.** or as soon thereafter as the matter may be heard by the Honorable Fred W. Slaughter of the United States District Court for the Central District of California, Southern Division, located in Courtroom 10-D at 411 West 4th Street, Room 1053, Santa Ana, CA 92701-4516. Plaintiff, through his undersigned counsel of record, will and hereby does move pursuant to Federal Rule of Civil Procedure 23 for entry of an order:

(1)   conditionally certifying the Settlement Class;

(2)   granting preliminary approval of the Settlement Agreement;

(3)    appointing Plaintiff Gregerson as a Class Representative;

(4)   appointing Raina Borrelli of Strauss Borrelli PLLC and Kennedy M. Brian and William B. Federman of  Federman & Sherwood as Class Counsel;[1]

(5)   approving the notice program and notices;

(6)   directing that notice be sent to the Settlement Class Members;

(7)   approving the Claim Form and claims process;

(8)   ordering the Settlement's opt-out and objection procedures;

(9)   appointing the Settlement Administrator;

(10) staying all deadlines in the Action pending Final Approval of the Settlement;

(11) setting a date for the Final Fairness Hearing;

(12) granting such other relief and further relief as the Court deems just and proper.

---

[1] Raina Borrelli of Strauss Borrelli PLLC and Kennedy M. Brian and William B. Federman of Federman & Sherwood are hereinafter referred to as "Proposed Settlement Class Counsel."

ii

1    This Motion is based on this Notice of Motion, the supporting Memorandum of

2  Points and Authorities, the Settlement Agreement (**Exhibit 1**), Raina Borrelli's

3  Declaration (**Exhibit 2**), all pleadings herein, and any other matter of which this Court

4  may take judicial notice.

5    Proposed Settlement Class Counsel conferred with Defendant, and Defendant

6  does not oppose the relief sought by Plaintiff.

7  Dated: March 11, 2025                Respectfully submitted,

8                                       */s/: William B. Federman*

9                                       **FEDERMAN & SHERWOOD**
                                        William B. Federman, *admitted pro hac vice*
10                                      Kennedy M. Brian, *admitted pro hac vice*
                                        10205 N. Pennsylvania Avenue
11                                      Oklahoma City, OK 73120
                                        Tel: (405) 235-1560
12                                      wbf@federmanlaw.com
                                        kpb@federmanlaw.com
13

14

15                                      **STRAUSS BORRELLI PLLC**
                                        Andrew G. Gunem (SBN 354042)
16                                      Raina Borrelli, *admitted pro hac vice*
                                        andrewg@straussborrelli.com
17                                      raina@straussborrelli.com
                                        One Magnificent Mile
18                                      980 N. Michigan Avenue, Ste. 1610
                                        Chicago, IL 60611
19                                      Telephone: (872) 263-1100
                                        Facsimile: (872) 263-1109
20

21

22                                      ***Proposed Settlement Class Counsel***

23

24

25

26

27                                      iii

28

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ............................ 1

III. SUMMARY OF THE PROPOSED SETTLEMENT TERMS ............. 2

   A. The Settlement Class ....................................................................... 2

   B. The Non-Reversionary Settlement Fund ........................................ 3

   C. Settlement Benefits. ........................................................................ 3

   D. Business Practice Changes. ............................................................ 3

   E. Confirmatory Discovery .................................................................. 4

   F. The Proposed Notice Program. ....................................................... 4

   G. Objection and Opt-Outs. ................................................................ 5

   H. Attorneys' Fees, Costs, Expenses and Service Awards. ................ 6

IV. THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ......................................................................................... 6

   A. *Hanlon* Factor 4, 6 and Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length; there is No Evidence of Collusion; and the Stage in Which Settlement was Reached Supports Preliminary Approval. ............... 8

   B. *Hanlon* Factor 3 and 5: the Amount Offered in Settlement and the Experience and Views of Counsel. ....................................................................... 9

   C. Fed. R. Civ. P. 23(e)(2)(A): Proposed Settlement Class Counsel and the Proposed Class Representative are Adequate Representatives ...................... 11

   D. *Hanlon* Factors 1, 2 and Fed. R. Civ. P. 23(e)(2)(C)(i): the Strength of Plaintiff's Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Costs, Risks, and Delay of Trial and Appeal ....... 12

iv

E.  Fed. R. Civ. P. 23(e)(2)(C)(iii): the Terms of Any Proposed Award of Attorneys' Fees .................................................................................. 15

F.  Fed. R. Civ. P. 23(e)(2)(C)(iv): Any Agreement Required to be Identified ... 16

G.  Fed. R. Civ. P. 23(e)(2)(C)(ii): the Method of Distributing Relief is Effective. 16

H.  Fed. R. Civ. P. 23(e)(2)(D): Class Members are Treated Equitably Relative to Each Other. .......................................................................................... 16

I.  *Hanlon* Factor 7: the Reaction of the Class. ..................................... 17

V. THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ........................................................................ 17

A.  The Settlement Class Meets the Requirements of 23(a). ................. 18

B.  The Settlement Class Meets the Requirements of 23(b)(3). ............ 19

VI. THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE UNDER RULE 23 AND SHOULD BE APPROVED. ........................... 20

VII.    CONCLUSION ............................................................................... 21

v

# TABLE OF AUTHORITIES

**CASES**

*Acosta v. Trans Union, LLC*,

    243 F.R.D. 377 (C.D. Cal. 2007) ............................................................. 6

*Amchem Prods., Inc. v. Windsor*,

    521 U.S. 591 (1997) ............................................................. 18, 19, 20

*Barbosa v. Cargill Meat Sols. Corp.*,

    297 F.R.D. 431 (E.D. Cal. 2013) ......................................................... 15

*Carter v. Vivendi Ticketing US LLC*,

    No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ..... 9

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1269 (9th Cir. 1992) ............................................................. 7

*Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*,

    533 F. Supp. 3d 881 (N.D. Cal. 2020) ................................................... 9

*Cohen v. Coca-Cola Co.*, No. LA CV19-04083 JAK (PLAX),

    2022 WL 22879570 (C.D. Cal. Feb. 18, 2022) ......................................... 8

*Corra v. ACTS Ret. Servs., Inc.*,

    No. CV 22-2917, 2024 WL 22075 (E.D. Pa. Jan. 2, 2024) ............................ 13

*Desue v. 20/20 Eye Care Network, Inc.*,

    No. 21-CIV-61275-RAR, 2023 WL 4420348 (S.D. Fla. July 8, 2023) ............... 10

*Fox v. Iowa Health Sys.*,

    No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ............. 12

*Fulton-Green v. Accolade, Inc.*,

    No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ............................. 12

*Gaston v. FabFitFun, Inc.*,

vi

2021 WL 6496734 (C.D. Cal. Dec. 9, 2021)...........................................................13

*Gordon v. Chipotle Mexican Grill, Inc.*,

   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019).......12

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011 (9th Cir. 1998)..........................................................................7, 19

*Harbour v. California Health & Wellness Plan*,

   No. 5:21-CV-03322-EJD (N.D. Cal. Jan. 16, 2024)...............................................9

*Hashemi v. Bosley, Inc.*,

   No. CV 21-946 PSG (RAOX), 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022)..14

*In re Anthem, Inc. Data Breach Litig.*,

   327 F.R.D. 299 (N.D. Cal. 2018).........................................................................14

*In re Banner Health Data Breach Litig.*,

   No. 2:16-CV-02696-SRB, 2020 WL 12574227 (D. Ariz. Apr. 21, 2020)...........17

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

   No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024)................13

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

   No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024)...............13

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,

   No. 3:08-1998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010)............................13

*In re Forefront Data Breach Litig.*,

   No. 21-CV-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023).........................16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

   293 F.R.D. 21 (D. Me. 2013)..............................................................................13

*In re High-Tech Employee Antitrust Litig.*,

   No. 11-CV-02509, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014)..........................6

vii

*In re Novant Health, Inc.*,

    No. 1:22-CV-697, 2024 WL 3028443 (M.D.N.C. June 17, 2024) .......................15

*In re Omnivision Techs., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2008)...................................................................17

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,

    No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ...................12

*In re Stable Rd. Acquisition Corp.*,

    No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)15

*In re Tableware Antitrust Litig.*,

    No. C-04-3514 VRW, 2007 WL 4219394 (N.D. Cal. Nov. 28, 2007)...................9

*In re the Home Depot, Inc.*, *Customer Data Sec. Breach Litig.*,

    No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .........18

*Krant v. UnitedLex Corp.*,

    No. 23-2443-DDC-TJJ, 2024 WL 5187565 (D. Kan. Dec. 20, 2024).................15

*Lalli v. First Team Real Est.-Orange Cnty.*,

    No. 820CV00027JWHADS, 2022 WL 8207530 (C.D. Cal. Sept. 6, 2022).........11

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998).................................................................................7

*Marshall v. Northrop Grumman Corp.*,

    No. 16-CV-6794 AB (JCX), 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020).......15

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,

    311 F.R.D. 590 (C.D. Cal. 2015) .........................................................................18

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,

    2009 WL 9100391 (C.D. Cal. June 24, 2009)......................................................15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

viii

221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 10, 14

*Perez v. Bodycote Thermal Processing, Inc.*,

   No. CV 22-00145 RAO, 2024 WL 4329057 (C.D. Cal. Aug. 23, 2024).............. 14

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) ................................................................. 18

*Swans v. Fieldworks, LLC*,

   No. 2:22-cv-07250, 2024 WL 1893327 (C.D. Cal. Apr. 12, 2024) ......................... 6

*Tyson Foods, Inc. v. Bouaphakeo*,

   577 U.S. 442 (2016) ............................................................................. 20

*Wahl v. Yahoo! Inc.*,

   No. 17-CV-02745-BLF, 2018 WL 6002323 (N.D. Cal. Nov. 15, 2018).............. 17

*Wal-Mart Stores, Inc. v. Dukes*,

   564 U.S. 338 (2011) ............................................................................. 18

*Wolin v. Jaguar Land Rover N. Am., LLC*,

   617 F.3d 1168 (9th Cir. 2010)................................................................. 20

**RULES**

Fed. R. Civ. P. 23................................................................................. 1, 6

**TREATISES**

4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 (4th ed. 2002) ...... 14

Manual for Complex Litigation (Fourth) § 21.632 (2004)........................................ 6

ix

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Gregerson ("Plaintiff" or "Class Representative") respectfully moves under Federal Rule of Civil Procedure ("Rule") 23, for preliminary approval of a class action settlement between Plaintiff and Defendant Toshiba America Business Solutions, Inc. ("TABS" or "Defendant") (together with Plaintiff, the "Parties"). The proposed Class Action Settlement Agreement (the "Agreement" or "Settlement Agreement"),[2]  if approved, will resolve the claims asserted by Plaintiff and the Settlement Class and will provide substantial monetary and injunctive relief to Settlement Class Members whose personally identifiable information ("PII") may have been compromised in a data security incident occurring on or around December 4, 2023 (the "Data Incident").

### II.    FACTUAL AND PROCEDURAL BACKGROUND

TABS is a subsidiary of the Japanese technology company, Toshiba, and provides copiers, printers, managed document services, and digital signage for businesses through the United States, Mexico, Central America, and South America. (Am. Class Action Compl. ("Compl."), ¶ 2, ECF No. 12).

Plaintiff alleges that on or around December 4, 2023, cybercriminals gained access to TABS' security systems and accessed PII stored on Defendant's computer systems. (*Id.* ¶ 4). The information potentially accessed during the Data Incident included TABS's current and former employees' names and Social Security numbers. (*Id.* ¶ 30). TABS notified approximately 6,883 individuals that their PII was potentially compromised as a result of the Data Incident in or around May 2024. (SA at p. 1).

After the announcement of the Data Incident, on June 4, 2024, former plaintiff

---

[2] The Settlement Agreement ("SA") is attached hereto as **Exhibit 1**. All capitalized terms not defined herein shall have the meaning ascribed to it in the Settlement Agreement.

Saundra Sonnier filed a lawsuit asserting claims against TABS relating to the Data Incident. (*Id.*). On July 22, 2024, Ms. Sonnier dismissed her claims, and Plaintiff Gregerson filed his claims against TABS, asserting claims for negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, violation of the California Unfair Competition Law, violation of the California Consumer Privacy Act, and for Declaratory Judgment. (*Id.* at pp. 1–2).

From the onset of the litigation, and over the course of several months, the Parties engaged in arms' length settlement negotiations that included informal exchange of information necessary to evaluate the Parties' respective strengths and weaknesses. After significant negotiations, the Parties reached the Settlement Plaintiff now presents to the Court for preliminary approval.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

### A. The Settlement Class

The Settlement Agreement encompasses two settlement classes, for settlement purposes only:

> **Settlement Class**
> [A]ll United States residents who were mailed notice by TABS that their personal information was impacted in a data incident beginning on approximately December 4, 2023.  However, the Settlement Class specifically excludes: (i) TABS, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

(*Id.* ¶ 1.28).

> **California Settlement Subclass**
> [A]ll persons residing in California who were mailed notification of the Data Incident from TABS at a California address.

(*Id.* ¶ 1.2).

**B. The Non-Reversionary Settlement Fund.**

Pursuant to the terms of the Settlement Agreement, TABS will establish a non-reversionary common fund of $435,000.00. (*Id.* ¶ 1.30). The Settlement Fund will be used to pay for: (1) all Valid Claims; (2) all Costs of Claims Administration; (3) any incentive payments approved by the Court to the Representative Plaintiff; and (4) attorney's fees and costs as approved by the Court. (*Id.* ¶¶ 1.30–1.31, 3.2).

**C. Settlement Benefits.**

The Settlement provides many meaningful benefits from Class Members to choose from. These benefits include:

Out-of-Pocket Expense Reimbursement: All members of the Settlement Class who have suffered a proven monetary loss and who submit a Valid Claim using the Claim Form are eligible for reimbursement of up to $7,500.00 if: (1) the loss is an actual, documented and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Data Incident; (3) the loss occurred between December 4, 2023, and the Claims Deadline; and (4) the member of the Settlement Class made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. (*Id.* ¶ 2.2).

California Settlement Subclass Payment: All California Settlement Subclass members can make a claim for a $150.00 cash payment. (*Id.* ¶ 2.4).

Pro Rata Cash Payment: All Settlement Class members may make a claim for a *pro rata* share of all cash remaining in the Net Settlement Fund. (*Id.* ¶ 2.5). The amount of the payment will be based upon the amount in the Net Settlement Fund, if any, after the payment of valid claims for Out-of-Pocket Expense Reimbursement and California Settlement Subclass Payments. (*Id.*).

**D. Business Practice Changes.**

Additionally, as part of the Settlement, Proposed Settlement Class Counsel

received assurances in the form of a confidential declaration (suitable for filing under seal if the Court requests) that TABS has implemented or will implement certain reasonable steps to adequately secure its systems and environments to prevent the likelihood of another data incident from occurring in the future. (*Id.* ¶ 2.7).

### E. Confirmatory Discovery.

Moreover, TABS provided Proposed Settlement Class Counsel with reasonable access to confidential confirmatory discovery regarding the number of Settlement Class Members and state of residence, the facts and circumstances of the Data Incident and TABS' response thereto, and the changes and improvements that have been made or are being made to further protect Settlement Class Members' PII. (*Id.* ¶ 2.8).

### F. The Proposed Notice Program.

To notify the Settlement Class Members of the Settlement and their rights thereunder, the Parties formulated a notice plan intended to provide the Settlement Class with the best practicable notice under the circumstances, in accordance with Due Process.

No later than fourteen (14) days after entry of the Preliminary Approval Order, TABS will provide the Claims Administrator—RG2 Claims Administration LLC— with the name and last known physical address of each Settlement Class Member. (*Id.* ¶ 3.2(a)). The Claims Administrator will then mail the Short Notice to the Class, after first running the Settlement Class Member data through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS. (*Id.* ¶ 3.2(c)). In the event the mailed Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Claims Administrator will re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice. (*Id.*). In the event that

subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out and Objection Deadline, a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Claims Administrator will perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Short Notice within seven (7) days of receiving such information. (*Id.*). The Claims Administrator will also establish a Settlement Website and a toll-free hotline. (*Id.* ¶¶ 3.2(b), 3.2(e)).

### G. Objection and Opt-Outs.

The Settlement allows a sufficient period of time for Settlement Class Members who do not want to take advantage of the Settlement's benefits to opt-out or object. Pursuant to the terms of the Settlement Agreement, any Settlement Class Member desiring to object to the Settlement Agreement must submit a timely written notice of his or her objection by the Objection Date. (*Id.* ¶ 5.1). All written objections and supporting papers must be submitted to the Court and (a) clearly identify the case name and number, (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Central District of California or by mailing them to the Court, and (c) be filed or postmarked on or before the deadline established by the Court (anticipated to be 60 days after the Notice Date). (*Id.*). Furthermore, any person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. (*Id.* ¶ 4.1). The written notice must clearly manifest a Person's intent to opt-out of the Settlement Class. (*Id.*). To be effective, written notice must be postmarked no later than sixty

1    (60) days after the Notice Commencement Date. (*Id.*).

2        **H. Attorneys' Fees, Costs, Expenses and Service Awards.**

3        Lastly, in recognition of the hard work and considerable risk Proposed

4    Settlement Class Counsel and Plaintiff faced, the Settlement Agreement allows

5    Proposed Settlement Class Counsel to seek: (i) up to one-third (1/3) of the Settlement

6    Fund to pay for Proposed Settlement Class Counsel's attorneys' fees, costs, and

7    expenses; and (ii) a $5,000.00 service award to the Class Representative. (*Id.* ¶¶ 7.1,

8    7.3).

9    **IV.   THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND**

10         **REASONABLE**

11        Parties seeking approval of a class action settlement must satisfy the

12    requirements of Federal Rule of Civil Procedure 23(e). Pursuant to Rule 23(e), class

13    action settlements are permitted "only with the court's approval ...after a hearing and

14    only on a finding that [the agreement] is fair, reasonable, and adequate." Fed. R. Civ.

15    P. 23(e). "Rule 23(e)… require[s] a two-step process for the approval of class action

16    settlements: the Court first determines whether a proposed class action settlement

17    deserves preliminary approval and then, after notice is given to class members,

18    whether final approval is warranted." *In re High-Tech Employee Antitrust Litig.*, No.

19    11-CV-02509, 2014 WL 3917126, at *13 (N.D. Cal. Aug. 8, 2014) (internal

20    quotations and citations omitted). "At the preliminary approval stage, the court 'must

21    make a preliminary determination on the fairness, reasonableness, and adequacy of

22    the settlement terms.'" *Swans v. Fieldworks, LLC*, No. 2:22-cv-07250, 2024 WL

23    1893327 (C.D. Cal. Apr. 12, 2024) (citing Manual for Complex Litigation (Fourth)

24    § 21.632 (2004)). However, the "settlement need only be potentially fair, as the Court

25    will make a final determination of its adequacy at the hearing on Final Approval."

26    *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in

27    original). There is a strong judicial policy in the Ninth Circuit that favors the

28

settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

To evaluate the fairness, reasonableness, and adequacy of a class action settlement, the Ninth Circuit has formulated the following factors for district courts to consider: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; (6) any evidence of collusion between the parties; and (7) the reaction of the class members to the proposed settlement (collectively, the "*Hanlon* factors"). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Federal Rule of Procedure 23(e)(2) was amended in 2018 and provides further guidance as to the requisite consideration when evaluating whether a class action settlement is fair, adequate, and reasonable:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

As the Advisory Committee comments explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but

7

rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry." *Cohen v. Coca-Cola Co.*, No. LA CV19-04083 JAK (PLAX), 2022 WL 22879570, at *5 (C.D. Cal. Feb. 18, 2022) (quoting Advisory Committee Comments to 2018 Amendments to Rule 23, Subdivision (e)(2)).

> ### A. *Hanlon* Factor 4, 6 and Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length; there is No Evidence of Collusion; and the Stage in Which Settlement was Reached Supports Preliminary Approval.

The Settlement presented to the Court for preliminary approval was negotiated at arm's length and without collusion in accordance with Rule 23(e)(2)(B) and *Hanlon* Factor 6.

Shortly after the Data Incident was announced by TABS, Proposed Settlement Class Counsel quickly worked to: (i) investigate the factual underpinning of the Data Incident and TABS's data security posture; (ii) identify the appropriate forum for initiating the class action lawsuit; (iii) research and evaluate the potential legal claims to determine their probability for success; (iv) interviewed individuals impacted by the Data Incident; and (v) drafted the complaint that initiated the lawsuit. (Declaration of Raina Borrelli in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Borrelli Decl."), ¶ 6 (attached hereto as **Exhibit 2**). Once the lawsuit was filed, TABS expressed interest in early settlement negotiations due to the small size of the Class. (*Id.* ¶ 8). Before engaging in settlement negotiations, Proposed Settlement Class Counsel requested, received, and reviewed informal discovery from Defendant regarding the Data Incident, affected Class Members, its remediation efforts and insurance coverage.[3] (*Id.*). After

---

[3] Although formal discovery was not completed, this does not prohibit preliminary approval of the Settlement. "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have

thoroughly evaluating the strengths and weaknesses of the case, Proposed Settlement Class Counsel engaged in extensive arm's length settlement negotiations with counsel for TABS over the span of many weeks. (*Id.*). The fact that the Settlement was achieved through well-informed arm's length negotiations between counsel with significant experience in data breach class actions weighs in favor of preliminary approval. *See Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("Where, as here, an agreement is the product of "serious, informed, non-collusive negotiations" conducted by experienced counsel over an "extended period of time," those facts will weigh in favor of approval.") (citation omitted); *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 4219394, at *3 (N.D. Cal. Nov. 28, 2007) (granting final approval, and holding that "extended negotiations that culminated in the settlement indicate that the agreement here was reached in a procedurally sound manner").

**B. *Hanlon* Factor 3 and 5: the Amount Offered in Settlement and the Experience and Views of Counsel.**

Through Proposed Settlement Class Counsel's efforts and negotiations, Proposed Settlement Class Counsel achieved a non-reversionary settlement fund of $435,000.00 for approximately 6,883 Settlement Class Members.[4] (SA, ¶ 1.30). The

---

sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998). This is certainly the case here, where Proposed Settlement Class Counsel obtained sufficient informal discovery that allowed them to evaluate the strengths and weaknesses of Plaintiff's claims before negotiating a Settlement. (Borrelli Decl., ¶¶ 6, 8).

[4] The Settlement equates to an approximate per person value of $63.20. This amount far exceeds the per person value achieved in many other data breach cases. *See, e.g.*, *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *1 (C.D. Cal. Oct. 30, 2023) (data breach settlement with approximate per person value of $6.86); *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, ECF Nos. 52, 63 (N.D. Cal. Jan. 16, 2024) (data breach settlement with approximate per person value of $6.34).

Settlement provides two (2) components of relief: (i) cash payments to Settlement Class Members; and (ii) meaningful business practice changes. (*Id.* ¶¶ 2.2, 2.4–2.5, 2.7). Under the monetary component, all Settlement Class Members are eligible to submit a claim for an Out-of-Pocket Expense Reimbursement of $7,500.00 and a Pro Rata Cash Payment. (*Id.* ¶¶ 2.2, 2.5). Additionally, any California Subclass Members will be permitted to submit a claim for a $150.00 cash payment. (*Id.* ¶ 2.4). As to the second component, Proposed Settlement Class Counsel received assurances, in the form of a confidential declaration, that TABS has implemented or will implement certain reasonable steps to adequately secure its systems and environments to prevent the likelihood of another data incident from occurring in the future. (*Id.* ¶ 2.7). These are meaningful benefits that mirror the relief Class Members could expect to receive only after a successful trial. In sum, the Settlement addresses the type of injuries and repercussions sustained by Settlement Class Members in the wake of the Data Incident and offers significant compensation to make each Settlement Class Member "whole." "[T]hrough the Settlement, Plaintiff[] and Class Members gain benefits without having to face further risk." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *8 (S.D. Fla. July 8, 2023); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.").

This exceptional Settlement was only obtained through the experience and skill of Proposed Settlement Class Counsel. (Borrelli Decl., ¶¶ 9–10). Proposed Settlement Class Counsel are highly experienced in this area of practice and have a well-respected reputation in the data privacy litigation sector. (*Id.* ¶ 10). Proposed Settlement worked hard and at great risk on behalf of the Settlement Class to obtain information from TABS regarding the Data Incident and utilized their experience and

knowledge gained from other data breach class actions to negotiate a favorable Settlement here. (*Id.*). Based on the experience and views of Proposed Settlement Class Counsel this is an excellent result for the Settlement Class, which militates in favor of preliminary approval. (*Id.*); *see also Lalli v. First Team Real Est.-Orange Cnty.*, No. 820CV00027JWHADS, 2022 WL 8207530, at *9 (C.D. Cal. Sept. 6, 2022) (granting final approval of settlement where the Court was satisfied that Class Counsel's experience "allowed them to evaluate the merits of the claims and risks associated with prosecuting them" and "Class Counsel also staunchly support[ed] the final outcome as fair and reasonable").

### C. Fed. R. Civ. P. 23(e)(2)(A): Proposed Settlement Class Counsel and the Proposed Class Representative are Adequate Representatives.

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Here, both the Class Representative and Proposed Settlement Class Counsel adequately represented the Settlement Class.

The Class Representative pursued this litigation on behalf of the Class for the benefit of the Class. The Class Representative demonstrated his adequacy by: (i) selecting well-qualified counsel; (ii) producing information and documents to his counsel to permit investigation and development of the complaint; (iii) being available as needed throughout the litigation; (iv) monitoring the litigation; (v) being willing to endure invasive discovery and depositions if needed; and (vi) reviewing the terms of the Settlement and the Settlement Agreement. (Borrelli Decl., ¶ 11). Plaintiff's claims and interests align with those of the Settlement Class, and he approves of the Settlement. (*Id.*). Therefore, the Class Representative has performed adequately.

Similarly, Proposed Settlement Class Counsel are adequate representatives. Proposed Settlement Class Counsel have extensive experience litigating complex

class actions and have demonstrated ample success in litigating data breach class actions. (*Id.* ¶ 12). Proposed Settlement Class Counsel have adequately represented the Class by: (i) fully investigating the facts and legal claims; (ii) preparing the complaint; (iii) requesting, obtaining, and reviewing informal discovery from TABS regarding the Data Incident, affected Class Members, its remediation efforts and insurance coverage; and (iv) extensively negotiating the settlement terms. (*Id.*). The work done by Proposed Settlement Class Counsel to date provided Proposed Settlement Class Counsel with sufficient information to negotiate this very favorable Settlement for the Class. (*Id.*). Thus, Proposed Settlement Class Counsel were also adequate representatives, and this factor weighs in favor of preliminary approval.

> ### D. *Hanlon* Factors 1, 2 and Fed. R. Civ. P. 23(e)(2)(C)(i): the Strength of Plaintiff's Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Costs, Risks, and Delay of Trial and Appeal.

Data breach litigation is a cutting-edge area of the law that presents numerous developing issues, evolving precedents, and unpredictable outcomes. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."); *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breaches are a "risky field of litigation" because they "are uncertain and class certification is rare."); *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."); *Corra v. ACTS*

*Ret. Servs., Inc.*, No. CV 22-2917, 2024 WL 22075, at *12 (E.D. Pa. Jan. 2, 2024) ("[T[he Court recognizes that data breach cases such as this one are complex and risky, and recovery at trial is decidedly uncertain—$350,000 in cash is significantly better than nothing."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-1998, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results). There was no clear path to success in this case. Indeed, not one data breach case has gone to trial. Despite these risks, Proposed Settlement Class Counsel undertook this litigation on behalf of Plaintiff and the Class.

This case was particularly risky, and Plaintiff faced substantial hurdles if the litigation were to continue. (Borrelli Decl., ¶¶ 13–14). Most notably, Plaintiff faced the risk of surviving a motion to dismiss, motion for summary judgment, and obtaining class certification. The class certification stage has been proven fatal in many data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach class action); *Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification in data breach case); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed class certification motion). Though Plaintiff and Proposed Settlement Class Counsel strongly believe in the merits of the claims asserted, Plaintiff and Proposed Settlement Class Counsel acknowledge that proving causation and damages in the emerging area of data breach cases can be difficult and is by no means guaranteed. *See, e.g.*, *Hashemi v. Bosley, Inc.*, No. CV

21-946 PSG (RAOX), 2022 WL 18278431, at *4 (C.D. Cal. Nov. 21, 2022) (explaining that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury). Continued litigation would require formal discovery, depositions, expert reports, obtaining and maintaining class certification throughout trial, and summary judgment, as well as possible appeals (interlocutory and/or after the merits). (Borrelli Decl., ¶ 14). This would also require additional rounds of briefing and the possibility of no recovery at all. (*Id.*). The Settlement guarantees relief to the Settlement Class whereas further protracted litigation would not.

For the reasons stated above, these factors heavily weigh in favor of preliminary approval. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (citing 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed.2002); *Perez v. Bodycote Thermal Processing, Inc.*, No. CV 22-00145 RAO, 2024 WL 4329057, at *7 (C.D. Cal. Aug. 23, 2024) (granting final approval after noting "[h]ad the case not settled when it did, additional costs for discovery and litigation would have been incurred, which would have resulted in less money available for Class Members for any later settlement"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (granting final approval where "further litigation would have been costly and uncertain and would have detrimentally delayed any potential relief for the Class," whereas the relief provided by settlement was "timely, certain, and meaningful"); *Hashemi*, 2022 WL 2155117, at *7 ("In short, given the ongoing risks and uncertainties of data breach litigation, as well as the fact that the Settlement provides significantly greater value per Class Member as compared to similar data breach class action settlements, the Court concludes that the Settlement amount is within the range

of approval.").

### E. Fed. R. Civ. P. 23(e)(2)(C)(iii): the Terms of Any Proposed Award of Attorneys' Fees.

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." Pursuant to the terms of the Settlement Agreement, Proposed Settlement Class Counsel are permitted to seek: (i) up to one-third (1/3) of the Settlement Fund to pay for Proposed Settlement Class Counsel's attorneys' fees, costs, and expenses. (SA, ¶ 7.1). The anticipated fee request falls in line with other class action cases and is within the range of approval. *See, e.g.*, *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) ("An attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (collecting cases awarding 33% of the common fund); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third."); *In re Stable Rd. Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393, at *13 (C.D. Cal. Apr. 23, 2024) (noting that in most common fund cases the fee award exceeds the 25% benchmark).

The anticipated fee request also falls in line with the amount awarded in other data privacy cases across the nation. *See, e.g.*, *In re Novant Health, Inc.*, No. 1:22-CV-697, 2024 WL 3028443 (M.D.N.C. June 17, 2024) (collecting cases awarding one-third of the common fund and approving the same); *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565, at *7 (D. Kan. Dec. 20, 2024) ("[A] one-third fee also aligns with those awarded by other courts in data breach class action

cases."); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023) (awarding one-third of the settlement fund).

Accordingly, this factor supports preliminary approval.

**F. Fed. R. Civ. P. 23(e)(2)(C)(iv): Any Agreement Required to be Identified.**

Other than the Settlement Agreement and the agreement with the Settlement Administrator to provide notice of the Settlement to the Settlement Class (if preliminarily approved) there are no other agreements required to be identified.

**G. Fed. R. Civ. P. 23(e)(2)(C)(ii): the Method of Distributing Relief is Effective.**

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii).

The Notice program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. To file a claim, Settlement Class Members need only complete a simple Claim Form and submit it with documentation supporting any claimed losses or alternatively select a *pro rata* cash payment. Settlement Class Members may submit claims online or through the mail. This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable under the particular circumstances of this case. Accordingly, the methods of distributing relief to Settlement Class Members further support that the Settlement is fair, reasonable, and adequate.

**H. Fed. R. Civ. P. 23(e)(2)(D): Class Members are Treated Equitably Relative to Each Other.**

Rule 23(e)(2)(D) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed settlement does not discriminate between any segments of the Settlement Class. All Settlement Class

Members are eligible to submit a claim for an Out-of-Pocket Expense Reimbursement of $7,500 and a Pro Rata Cash Payment. (SA, ¶¶ 2.2, 2.5). Additionally, all California Subclass Members will be permitted to submit a claim for a $150.00 cash payment. (*Id.* ¶ 2.4). The only difference among Settlement Class Members is that those who have substantiated financial losses will be compensated for those losses, and Class Members who would have statutory claims under California law will be compensated for their release of those claims. "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (citation omitted).

While the named Plaintiff will seek a Service Award of $5,000.00 (*id.* ¶ 7.3) for his services on behalf of the Settlement Class, a Service Award of this amount are regularly approved in this Circuit. *Wahl v. Yahoo! Inc.*, No. 17-CV-02745-BLF, 2018 WL 6002323, at *6 (N.D. Cal. Nov. 15, 2018) (awarding service award of $5,000 where the parties participated in informal discovery); *In re Banner Health Data Breach Litig.*, No. 2:16-CV-02696-SRB, 2020 WL 12574227, at *7 (D. Ariz. Apr. 21, 2020) (awarding service awards of $5,000 in data privacy case).

Therefore, this factor supports preliminary approval.

## I. *Hanlon* Factor 7: the Reaction of the Class.

At the preliminary approval stage, evaluation of this factor is premature because notice of the settlement has not yet been disseminated to the Settlement Class. Thus, this factor is neutral.

## V. THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

After ensuring that the Settlement is fair, adequate, and reasonable, the Court must ensure that the four (4) requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *See Amchem Prods., Inc.*

1   *v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53

2   (9th Cir. 2003). Under Rule 23(a), the plaintiff must show that the class is sufficiently

3   numerous, that there are questions of law or fact common to the class, that the claims

4   or defenses of the representative parties are typical of those of the class, and that the

5   representative parties will fairly and adequately protect the class's interests. Fed. R.

6   Civ. P. 23(a).

7   **A. The Settlement Class Meets the Requirements of 23(a).**

8   ***Numerosity.*** Rule 23(a) requires that a class be "so numerous that joinder of

9   all members is impracticable." Fed. R. Civ. P. 23(a)(1). A class of more than forty

10  individuals generally satisfies the numerosity requirement. *Moore v. Ulta Salon,*

11  *Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015). Here, there

12  are approximately 6,883 Settlement Class Members. (SA at p. 1).  Joinder is therefore

13  impracticable, and the Settlement Class satisfies the numerosity requirement under

14  Rule 23.

15  ***Commonality.*** The Settlement Class also satisfies the commonality

16  requirement, which requires that class members' claims "depend upon a common

17  contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in

18  most data breach cases, "[t]hese common issues all center on [defendant's] conduct,

19  satisfying the commonality requirement." *In re the Home Depot, Inc.*, *Customer Data*

20  *Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga.

21  Aug. 23, 2016). Indeed, common questions include, *inter alia*, (i) whether Settlement

22  Class Members' PII was compromised in the Data Incident; (ii) whether Defendant

23  owed a duty to Plaintiff and Settlement Class Members to protect their PII; (iii)

24  whether Defendant breached its duties; and (iv) whether Defendant violated common

25  law and statutory violations. Thus, the commonality requirement is easily met.

26  ***Typicality.*** Plaintiff satisfies the typicality requirement under Rule 23 because

27  his claims, which are based on Defendant's alleged failure to protect the PII of

28

Plaintiff and all members of the Settlement Class, are reasonably coextensive with those of the absent class members. *See* Fed. R. Civ. P. 23(a)(3). Plaintiff alleges his PII was compromised, and that he was therefore impacted by the same inadequate data security that harmed the rest of the Settlement Class. As such, typicality is met here. *See Hanlon*, 150 F.3d at 1020.

*Adequacy.* The adequacy requirement is satisfied where (i) there are no antagonistic interests between named plaintiffs and their counsel and the absent class members; and (ii) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4). Here, Plaintiff is a member of the Settlement Class who allegedly experienced the same injuries and seeks, like other Settlement Class Members, compensation for Defendant's alleged data security shortcomings. Plaintiff has no conflicts of interest with other Settlement Class Members, is subject to no unique defenses, and he and his counsel have and continue to prosecute this case on behalf of the Settlement Class. (Borrelli Decl., ¶ 11). Further, Proposed Settlement Class Counsel have decades of combined experience as class action litigators and are well suited to advocate on behalf of the Settlement Class. Accordingly, the adequacy requirement is satisfied. (*Id.* ¶¶ 10, 12).

**B. The Settlement Class Meets the Requirements of 23(b)(3).**

Plaintiff also seeks to certify the Settlement Class, for settlement purposes only, under Rule 23(b)(3), which has two (2) components: (i) predominance; and (ii) superiority. Fed. R. Civ. P. 23(b)(3). Pursuant to Rule 23(b)(3), the Court must find that common questions of law or fact predominate over individual questions and that a class action is the superior method for the fair and efficient resolution of the matter. *Id.* Both requirements are met here.

*Predominance.* The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. As discussed above, common questions predominate over

19

any questions affecting only individual members. Plaintiff's claims depend on whether Defendant used reasonable data security to protect his PII. That question can be resolved, for purposes of settlement, using the same evidence for all Settlement Class Members, and therefore makes a class-wide settlement appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'") (citation omitted).

**Superiority.** Furthermore, Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620. ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems") (emphasis added).

In sum, certification of the Settlement Class for purposes of settlement is appropriate.

## VI.    THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE UNDER RULE 23 AND SHOULD BE APPROVED.

Lastly, Plaintiff requests approval of the proposed manner and form of the notice that will be sent to the Settlement Class Members, as described in Section

III(E), *supra*, and appointment of RG2 Claims Administration LLC as the Settlement Administrator.

The proposed notice documents, which are attached to the Settlement Agreement as exhibits, clearly and concisely state the nature of the action, a summary of the terms of the proposed settlement, the deadline for requesting exclusion from the Settlement or filing an objection to the Settlement, the consequences of inaction, and will provide the date, time, and place of the final approval hearing. Thus, the notice requirements contained in Federal Rule of Civil Procedure 23(c)(2)(B) are met.

Additionally, the Settlement Administrator, RG2 Claims Administration LLC, has a proven track record of successfully administering class action settlements and should be entrusted with the execution of the notice program and the claims administration process.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval and enter the Proposed Preliminary Approval Order submitted herewith.

Date:  March 11, 2025                            Respectfully submitted,

                                                */s/: William B. Federman*
                                                **FEDERMAN & SHERWOOD**
                                                William B. Federman
                                                *admitted pro hac vice*
                                                Kennedy M. Brian
                                                *admitted pro hac vice*
                                                10205 N. Pennsylvania Avenue
                                                Oklahoma City, OK 73120
                                                Tel: (405) 235-1560
                                                wbf@federmanlaw.com
                                                kpb@federmanlaw.com

                                                **STRAUSS BORRELLI PLLC**
                                                Andrew G. Gunem (SBN 354042)

21

Raina Borrelli, *admitted pro hac vice*
andrewg@straussborrelli.com
raina@straussborrelli.com
One Magnificent Mile
980 N. Michigan Avenue, Ste. 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

***Proposed Settlement Class Counsel***

Byron T. Ball
(State Bar No. 150195)
**THE BALL LAW FIRM APC**
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Telephone: (310) 980-8039
Facsimile: (415) 477-6710
Email: btb@balllawllp.com

***Additional Plaintiff's Counsel***

## CERTIFICATE OF CONFERENCE

Pursuant to L.R. 7-3 Plaintiff and Defendant met and conferred and Defendant does not oppose the relief sought herein.

*/s/: William B. Federman*

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2025, I caused the foregoing to be filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

*/s/: William B. Federman*